IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DAVID RANGE, | ) | Case. No. 5:20-CV-03488-GEKP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. ROSEN, Acting Attorney | ) | |
| General of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Regulatory Scheme. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Bryan Range's Misdemeanor Conviction. . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Bryan Range's Personal Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.    Section 922(g)(1)'s Impact on Bryan Range. . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    Bryan Range Is Entitled to Relief from Section 922(g)(1)'s Enforcement Under
    *Marzzarella*'s Two-Step Framework for Evaluating Second Amendment Claims. . . . . . . . . 7

    A.    Bryan Range's Misdemeanor Was Not a "Serious Crime". . . . . . . . . . . . . . . . . . . 8

        1.    Pennsylvania's Legislature Did Not Believe That Range's Offense
            Was "Serious". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    Range's Misdemeanor Was Nonviolent. . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.    Range's Misdemeanor Was Not Dangerous. . . . . . . . . . . . . . . . . . . . . . 11

        4.    The Prosecution and the Court Agreed That Range Should
            Receive a Light Sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        5.    There Is No Clear Cross-Jurisdictional Consensus as to Seriousness. . . . . . 11

    B.    The Government Cannot Carry Its Step Two Burden. . . . . . . . . . . . . . . . . . . . . 13

II.    Bryan Range Is Entitled to Relief from Section 922(g)(1)'s Enforcement
    Because He Is Not Dangerous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

Cases

*Binderup* v. *Att'y Gen.*,
    836 F.3d 336 (3d Cir. 2016) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-11, 13, 15, 16

*Danforth* v. *Minnesota*,
    552 U.S. 264 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Folajtar* v. *Att'y Gen.*, No. 19-1687,
    2020 U.S. App. LEXIS 37006 (3d Cir. Nov. 24, 2020) . . . . . . . . . . . . . . . . . . 6-10, 15, 16

*Holloway* v. *Att'y Gen.*,
    948 F.3d 164 (3d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-10

*Kanter* v. *Barr*,
    919 F.3d 437 (7th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

*United States* v. *Irving*,
    316 F. Supp. 3d 879 (E.D. Pa. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Statutes

18 U.S.C. § 922(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 924(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

27 C.F.R. § 478.124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ala. Code § 13A-9-150(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Alaska Stat. § 47.25.985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ariz. Rev. Stat. § 46-215(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ark. Code Ann. § 5-36-202(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Wel. & Inst. Code § 10980(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Colo. Rev. Stat. § 18-4-401(2)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conn. Gen. Stat. § 17b-97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conn. Gen. Stat. § 53a-122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.C. Code § 4-218.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Del. Code Ann. tit. 11, § 841(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Del. Code Ann. tit. 11, § 843 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fla. Stat. § 414.39(5)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ga. Code Ann. § 49-4-15(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Haw. Rev. Stat. § 346-34(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Idaho Code § 18-2408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Idaho Code § 56-227(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ind. Code § 35-43-5-7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

305 Ill. Comp. Stat. Ann. § 5/8A-6(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Iowa Code § 714.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Iowa Code § 714.8(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kan. Stat. Ann. § 21-5801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kan. Stat. Ann. § 39-720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ky. Rev. Stat. Ann. § 205.8463(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La. Rev. Stat. Ann. § 14:67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La. Rev. Stat. Ann. § 46:114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

Mass. Gen. Laws ch.18, § 5b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Md. Code Ann., Crim. Law § 8-504(c).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Me. Rev. Stat. Ann. tit. 22, § 4315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Minn. Stat. § 256.984. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mo. Rev. Stat. § 205.967. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mo. Rev. Stat. § 570.030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mont. Code § 45-6-301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mont. Code § 53-2-107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.C. Gen. Stat. § 108A-53. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.D. Cent. Code § 12.1-23-02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.D. Cent. Code § 12.1-23-05. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.H. Rev. Stat. Ann. § 167:17-b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.H. Rev. Stat. Ann. § 167:17-c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.J. Stat. Ann. § 2C:20-2(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.J. Stat. Ann. § 2C:20-4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.J. Stat. Ann. § 2C:43-6(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.M. Stat. Ann. § 30-40-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

N.Y. Penal Law § 158.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nev. Rev. Stat. Ann. § 422.410. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ohio Rev. Code § 2921.13(A)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ohio Rev. Code § 2921.13(F)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Okla. Stat. Ann. tit. 56, § 185. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Or. Rev. Stat. Ann. § 161.705(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Or. Rev. Stat. Ann. § 411.630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Or. Rev. Stat. Ann. § 411.990(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 Pa. C.S. § 6105(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

62 Pa. C.S. § 481(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12

R.I. Gen. Laws § 40-6-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S.C. Code Ann. § 16-13-430(C)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S.D. Codified Laws § 22-29-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S.D. Codified Laws § 22-29-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tenn. Code Ann. § 71-5-314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Penal Code § 31.03(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Utah Code Ann. § 76-8-1206(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Va. Code Ann. § 18.2-95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Va. Code Ann. § 63.2-522 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Vt. Stat. Ann. tit. 33, § 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Vt. Stat. Ann. tit. 33, § 143(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

W. Va. Code Ann. § 9-5-4(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wash. Rev. Code Ann. § 74.08.331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wis. Stat. § 943.20(3)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wyo. Stat. Ann. § 42-2-112(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Other Authorities

2018 Pa. Act 125, § 5 (Oct. 24, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

Bryan Range fits no reasonable definition of a serious or dangerous criminal. To the contrary, he typifies the sort of law-abiding, responsible citizen whose fundamental right to keep and bear arms for self-defense is secured by the Second Amendment. To the extent Range possessed weapons, he has always done so responsibly, without posing any special risk. A peaceful, stable family man employed throughout his adult life, Range has helped raise five children, and has largely kept out of trouble.

Range's single, decades-old transgression for which the government permanently disarms him involved a sin of omission under difficult circumstances, a misdemeanor for which Range accepted responsibility and received no jail time. Nearly thirty years ago, struggling to raise three young children, Range signed a food stamp application that failed to fully disclose his income. Range paid his fine, made restitution, and had no further contact with the criminal justice system save for minor traffic and parking offenses, and a fishing infraction.

Prohibiting Range from possessing firearms on account of his misdemeanor conviction is not merely unjust and pointless. It is unconstitutional. The predicate offense is in no way a "serious crime," and the government cannot carry its burden in showing that disarming Range advances public safety. Bryan Range is entitled to summary judgment as a matter of law, enjoining enforcement of 18 U.S.C. § 922(g)(1) on account of his 1995 misdemeanor conviction and requiring the government to issue him a "UPIN" code enabling him to purchase firearms.[1]

---

[1] All further statutory citations are to Title 18 of the United States Code unless noted otherwise.

1

STATEMENT OF FACTS

A.      *The Regulatory Scheme*

Section 922(g)(1) prohibits the possession of firearms by any person convicted of "a crime

punishable by imprisonment for a term exceeding one year." Violation of this provision is a felony

criminal offense punishable by fine and imprisonment of up to ten years. *See* Section 924(a)(2).

Section 922(d)(1) prohibits anyone from transferring firearms or ammunition to anyone whom the

transferor has reason to know was convicted of "a crime punishable by imprisonment for a term

exceeding one year." Violation of this provision is a felony criminal offense punishable by fine and

imprisonment of up to ten years. *See* Section 924(a)(2).

All firearms purchasers within the United States who do not possess a Federal Firearms

License, meaning, virtually all ordinary civilian consumers of firearms, must complete "Form 4473,

Firearms Transaction Record Part I – Over-The-Counter," administered under Defendants'

authority, in order to purchase a firearm. 27 C.F.R. § 478.124. Question 21(c) on Form 4473 asks:

> Have you ever been convicted in any court, including a military court, of a **felony**, or any
> other crime for which the judge could have imprisoned you for more than one year, even if
> you received a shorter sentence including probation?

U.S. Dept. of Justice, *Firearms Transaction Record*, ATF Form 4473, available at

https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-

53009/download (last visited January 8, 2021). Defendants instruct dealers not to sell

firearms to prospective purchasers who answer "yes" to this question. Pl. Separate Statement of

Undisputed Material Fact ("SMF") 27.

B.      *Bryan Range's Misdemeanor Conviction*

In January 1994, Bryan Range was earning approximately $9-$9.50 an hour mowing lawns,

taking home approximately $300 a week. SMF 6. Range and his then-wife were struggling to raise

2

three children—a three and a half year old and twin two-year olds—on this income. Range's wife could not work as she was the children's primary caregiver. SMF 7. Range's then-wife prepared an application for public assistance, which she and Range both signed. SMF 8. The application under-reported Range's income. SMF 9. Range does not recall reviewing the application, but he accepted responsibility for signing it and acknowledged that it was wrong for him to receive additional food stamps without having fully disclosed his income. SMF 10.

Accordingly, on August 8, 1995, Range pleaded guilty and was convicted by the Court of Common Pleas of Lancaster County, Pennsylvania, of one count of 62 Pa. C.S. § 481(a), making a false statement to obtain $2,458 in food stamps/assistance, by not fully disclosing his income. SMF 3, 11. The offense was graded as a first degree misdemeanor. SMF 4. Range was sentenced to three years' probation, which he successfully completed; and was assessed a $100 fine, $288.29 in costs and $2,458 in restitution, which he paid. SMF 11. In Pennsylvania, a first degree misdemeanor is punishable by up to five years' imprisonment, but carries no mandatory minimum sentence. SMF 5.

Range was not represented by counsel during his prosecution for violating 62 Pa. C.S. § 481(a). SMF 20. When Range pleaded guilty, he understood only that he was pleading guilty to a misdemeanor, for which he would receive probation, be fined, and ordered to make restitution. SMF 21. Range was not advised of the maximum potential sentence, and he was not advised that the plea would cause him to be barred from possessing firearms. SMF 22.

    C.    *Bryan Range's Personal Background*

Range has never engaged in violence, nor has he ever threatened anyone with violence. SMF 13. To the extent that Range has possessed firearms and other weapons, he has always been careful to keep and use these responsibly. SMF 14.

Range has been married for the past 18 years to his second wife, with whom he has been together for the past 25 years. SMF 16. He has lived at the same address for the past 24 years. SMF 17. The couple has successfully raised five now-adult children. SMF 18. Range has been productively employed throughout his adult life. He is in his thirteenth year of employment as a machinist, prior to which he was self-employed as a painter for five years. Before then, was employed for ten years as a color technician for a printer. SMF 19.

Aside from his 1995 misdemeanor conviction, Range's only other criminal history consists of minor traffic and parking infractions, as well as a summary fishing offense in 2011 when he could not produce a license while fishing at the Susquehanna River. Range erred in thinking that he had renewed his fishing license. He paid fines for not having the license when asked by the fishing officer, and for not having the license he claimed. The incident did not impact Range's ability to fish. SMF 12. Range has always strived to comply with the law, including weapons laws, which he has never knowingly violated. SMF 15.

D.    *Section 922(g)(1)'s Impact on Bryan Range*

Not suspecting that he was barred from possessing firearms, Range attempted to purchase a firearm, and was rejected by the instant background check system. SMF 23. Upon that rejection, a gun store employee reviewed with Range a list of prohibiting offenses, none of which Range committed. The employee then advised that the rejection was a typical error and that Range should just retry at a later time. SMF 24.[2] Years later, Range was again denied a firearms purchase, and was again led to believe the rejection was a mistake as he had not committed any of the offenses that he was told were prohibiting. SMF 25.

_____

[2]Pennsylvania forbids firearm possession by those who have committed specifically enumerated crimes. That list does not include Range's offense. *See* 18 Pa. C.S. § 6105(b).

Range researched the matter further and was surprised to learn that he was barred from possessing firearms on account of his public assistance conviction. He thus immediately disposed of the only firearm within his possession. SMF 26. Range is not subject to any other firearms prohibition under Section 922(g). SMF 2; Section 922(g).

"Section 922(g)(1) is by far the most frequently applied of Section 922(g)'s firearms disqualifications, forming the basis for thousands of criminal prosecutions and tens of thousands of firearm-purchase denials each year." SMF 28. Range presently intends to purchase and possess firearms for self-defense within his own home and for hunting. SMF 1. He refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Section 922(g)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm. SMF 29. Range suffers the on-going harm of being unable to obtain firearms, which he would, in fact, obtain but for Defendants' enforcement of Section 922(g)(1). SMF 30.

## SUMMARY OF ARGUMENT

Section 922(g)(1) is only "presumptively lawful." *District of Columbia* v. *Heller*, 554 U.S. 570, 626-27 & n.26 (2008). As a matter of law, Bryan Range has overcome that presumption under both of the approaches outlined in *Binderup* v. *Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (en banc).

In *Binderup*, Judge Ambro's plurality offered that a challenger may overcome Section 922(g)(1)'s prohibition under the familiar two-step Second Amendment process. At step one, the challenger must establish that the predicate offense was not "serious." *Binderup*, 836 F.3d at 348 (Ambro, J.). Upon that showing, the government bears a step two heightened scrutiny burden to demonstrate that the prohibition's application against the challenger advances public safety. *Id.* at 347. A five-judge contingent led by Judge Hardiman argued that only the challenger's "propensity for violence" determines the outcome of an as-applied Second Amendment claim against Section

922(g)(1)'s enforcement. *Id.* at 380 (Hardiman, J., concurring in part and concurring in the judgment).

Judge Ambro's approach is controlling. *Holloway* v. *Att'y Gen.,* 948 F.3d 164 (3d Cir. 2020). But judges within and without this circuit continue to advocate for Judge Hardiman's views, *Folajtar* v. *Att'y Gen.*, No. 19-1687, 2020 U.S. App. LEXIS 37006, at *30-*63 (3d Cir. Nov. 24, 2020) (Bibas, J., dissenting); *Kanter* v. *Barr*, 919 F.3d 437, 452-69 (7th Cir. 2019) (Barrett, J., dissenting), and a growing string of petitions for certiorari continually test these waters, *Flick* v. *Rosen*, Supreme Ct. No. 20-982 (filed Dec. 29, 2021); *Folajtar* v. *Rosen*, Supreme Ct. No. 20-812 (filed Dec. 11, 2020); *Holloway* v. *Rosen*, Supreme Ct. No. 20-782 (filed Dec. 3, 2020). Accordingly, while Range argues here primarily under circuit precedent, he respectfully preserves his claim under Judge Hardiman's dangerousness test as well.

Ultimately, the methodology makes no difference. Range is entitled to summary judgment under either approach.

Range passes step one because his offense was not "serious." Range committed a non-violent misdemeanor posing no danger to anyone, for which he received no jail time. The offense was one of omission and irresponsibility, not malevolence, and it is one on which cross-jurisdictional consensus is elusive. The prosecution and the court did not treat Range as a serious criminal. Neither should this Court. At step two, there is no conceivable justification—let alone one tied to public safety that meets heightened scrutiny—to deny Range access to firearms. Range is a stable family man, a committed husband and father who has worked hard his entire life. Nothing about Range's decades-old misdemeanor, which is closer to Jean Valjean's first offense than to anything in Charles Manson's career, indicates any risk. Range has never been violent, nor has he ever threatened anyone with violence. He has not re-offended, save for minor traffic, parking, and fishing matters.

6

Of course the step two burden is not Range's, but the government's. Range is not required to prove the negative proposition that the prohibition's application to him fails heightened scrutiny. But as of this writing, Range cannot address the government's step two evidence because the government has refused to provide it. While the government claimed it had evidence rationalizing the prohibition, it rejected multiple requests to produce such evidence during discovery. The government may not have revealed its alleged evidence of dangerousness, but by shirking its discovery obligations it has revealed enough.

Range passes both steps of Judge Ambro's controlling approach to as-applied Second Amendment challenges. By passing step two, Range satisfies Judge Hardiman's test. Range is entitled to summary judgment.

ARGUMENT

I.     BRYAN RANGE IS ENTITLED TO RELIEF AGAINST SECTION 922(G)(1)'S ENFORCEMENT UNDER *MARZZARELLA*'S TWO-STEP FRAMEWORK FOR EVALUATING SECOND AMENDMENT CLAIMS.

"We do . . . permit Second Amendment challenges to § 922(g)(1) as applied to individuals, which we analyze using a two-pronged approach first announced in [*United States* v. *Marzzarella*, 614 F.3d 85, 89 (3d. Cir. 2010)]." *Folajtar*, 2020 U.S. App. LEXIS 37006, at *5 (citing *Holloway*, 948 F.3d at 171) (other citation omitted); *Binderup*, 836 F.3d at 356.

"At *Marzzarella* step one for challenges to § 922(g)(1), we determine whether an individual has committed a 'serious' offense, and thus was an 'unvirtuous citizen[]' who was historically barred from possessing firearms and fell out of the Second Amendment's scope." *Holloway*, 948 F.3d at 171 (citations omitted).

"[I]f the challenger succeeds at step one, the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." *Binderup*, 836 F.3d at 347. "No

doubt § 922(g)(1) is intended to further the government interest of promoting public safety by preventing armed mayhem, an interest that is both important and compelling. But whether we apply intermediate scrutiny or strict scrutiny—and we continue to follow the lead of *Marzzarella* in choosing intermediate scrutiny, 614 F.3d at 97—the Government bears the burden of proof on the appropriateness of the means it employs to further its interest." *Id*. at 353 (citations and internal quotation marks omitted).

Bryan Range satisfies his step one burden. The government cannot meet its step two burden.

A.      Bryan Range's Misdemeanor Was Not a "Serious Crime."

Bryan Range was careless in seeking public assistance while struggling to raise three small children. Did that forever tar him as "unvirtuous," to the point of losing fundamental rights? No.

At step one, "the challenger must show that he was not previously convicted of a serious crime." *Holloway*, 948 F.3d at 172 (citing *Binderup*, 836 F.3d at 350). "[T]here are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." *Binderup*, 836 F.3d at 351; *Holloway*, 948 F.3d at 172. "[B]ut various factors may be informative including, but not limited to, whether the crime poses a danger or risk of harm to self or others, whether the crime involves violence or threatened violence, the classification of the offense, the maximum penalty, the penalty imposed, and how other jurisdictions view the crimes." *Holloway*, 948 F.3d at 172 (citing *Binderup*, 836 F.3d at 351-52).

"In *Binderup*, Judge Ambro considered: (1) whether the crime of conviction was classified as a misdemeanor or felony, (2) whether the criminal offense involves violence or attempted violence as an element, (3) the sentence imposed, and (4) whether there is a cross-jurisdictional consensus as to the seriousness of the crime." *Id*. n.10. While the criteria for "seriousness" are still unfixed, *Folajtar*, 2020 U.S. App. LEXIS 37006, at *8, the Third Circuit has since provided two

important points of guidance. First, the offense's potential for public harm, not a relevant factor for either of the *Binderup* challengers, can be an overriding fifth factor. *Holloway*. Second, the courts' strong deference to legislative prerogative means that the first *Binderup* prong—classification—is all but determinative in cases that are not otherwise disqualified. *Folajtar*.

Bryan Range's offense is not "serious" under at least four of the five factors. Most critically, it is not "serious" under the first, most important factor—the judgment of Pennsylvania's legislature.

    1. *The Legislature Did Not Believe That Range's Offense Was "Serious."*

In assessing a crime's seriousness, the Third Circuit "giv[es] primary weight to the legislature's determination" of whether the offense is a felony or misdemeanor. *Folajtar*, 2020 U.S. App. LEXIS 37006, at *18. "[W]e have never held that felonies and state misdemeanors should be analyzed similarly or that the considerations we examined in *Binderup* and *Holloway* should be weighed equally. Instead, we consistently viewed the legislature's classification of the offense as a powerful consideration." *Id.* at *9 (citation omitted). Indeed, "a state legislature's classification of an offense as a misdemeanor is a powerful expression of its belief that the offense is not serious enough to be disqualifying." *Binderup*, 836 F.3d at 351.

Of course, not *all* misdemeanors are unserious, *id.* at 351-52, just as not *all* felonies are serious, *Folajtar*, 2020 U.S. App. 37006, at *10. Classification is not "dispositive." *Holloway*, 948 F.3d at 174. But it's fairly close: "generally conclusive." *Folajtar*, at *9.

An offense's classification is given "primary weight," and is "generally conclusive," precisely because classification is a legislative prerogative. "In upholding Congress's decision to disarm individuals who commit felonies, we respect the legislatures' choices about which crimes count as serious and preserve the states' traditional autonomy to 'define crimes [and] punishments.'"

*Id.* at *16 (quoting *Danforth* v. *Minnesota*, 552 U.S. 264, 280 (2008)). "This ensures that disarmament decisions reflect the views and values of our communities, as well as the expertise and experience of legislatures far better equipped than the judiciary to make sensitive public policy judgments." *Id.* (internal quotation marks and citations omitted).

Classification is not a one-way ratchet, employed only in felony cases to assist the government's defense but relegated to a lower status when considering misdemeanors. Legislative judgment is what it is—equally important in *all* cases. Indeed, the Third Circuit's holding that "the legislature's decision to label an offense a felony is generally conclusive in our analysis of seriousness . . . aligns with our earlier reasoning that '[m]isdemeanors are, and traditionally have been, considered less serious than felonies.'" *Folajtar*, 2020 U.S. App. LEXIS 37006, at *9-*10 (quoting *Binderup*, 836 F.3d at 351). For a misdemeanor to be considered a "serious" offense notwithstanding the legislature's determination, it must have some other elevating characteristic, such as violence, dangerousness, or an especially high potential sentence. *See Binderup*, 836 F.3d at 351-52; *Holloway*, 948 F.3d at 173-74.

In *Binderup*, the Third Circuit determined that a Pennsylvania class 1 misdemeanor involving no violence or danger was not "serious." Range's misdemeanor is no different.[3]

_____

[3] Range notes that his offense would be graded differently today. In 2018, the legislature amended 62 Pa. C.S. § 481 to reduce the felony threshold to $1,000. *See* 2018 Pa. Act 125, § 5 (Oct. 24, 2018). But that is irrelevant. "[T]he category of serious crimes changes over time as legislative judgments regarding virtue evolve." *Binderup*, 836 F.3d at 351. Indeed, some states have moved in the other direction. Texas, for example, has raised the felony threshold from $1,500 to $2,500. *Compare* current and 1995 versions of Tex. Penal Code § 31.03(e)(3). Regardless, Section 922(g)(1) cannot reach non-qualifying convictions just because they would be tried differently today. "This would require some form of judicial time travel." *United States* v. *Irving*, 316 F. Supp. 3d 879, 890 (E.D. Pa. 2018).

2.      *Range's Misdemeanor Was Nonviolent*.

Range's offense did not have "the use or attempted use of force as an element." *Binderup*, 836 F.3d at 352 (footnote omitted).

3.      *Range's Misdemeanor Was Not Dangerous*.

Range's offense did not "present[] a potential for danger and risk of harm to self and others." *Holloway*, 948 F.3d at 173 (footnote and citation omitted).

4.      *The Prosecution and the Court Agreed That Range Should Receive a Light Sentence*.

Range "received a minor sentence by any measure," *Binderup*, 836 F.3d at 352: probation, a fine, and restitution. "With not a single day of jail time, the punishment[] here reflect[s] the sentencing judge['s] assessment of how minor the violation[] [was]." *Id.* It also reflects the prosecution's position. Range was *in pro se*, and this deal was readily offered him.

5.      *There Is No Clear Cross-Jurisdictional Consensus as to Seriousness*.

At first glance, cross-jurisdictional consensus weighs in the government's favor. Thirty-seven jurisdictions would, at least today, punish Range's conduct as a felony, while ten would clearly treat the offense as a misdemeanor, one would likely treat it as a misdemeanor, another would likely not convict Range of anything, and yet another does not use such classification. But on closer look, the consensus evaporates.

Jurisdictions are divided as to whether making false statements in the procurement of public assistance is a discreet crime. Those that accept this distinction, like Pennsylvania, tend to treat the offense more leniently. Only twenty-six of these jurisdictions, a bare majority of the states and something less than a consensus, would today treat Range's offense as a felony.

11

In fifteen states, Range's offense would be lumped together with theft or falsification as a categorical matter, either because the state apparently lacks a more-specific crime addressing that conduct, or because a statute actually directs that public assistance misstatements be prosecuted as these generalized offenses. Of these jurisdictions, twelve would treat Range's offense as a felony,[4] two would treat it as a misdemeanor,[5] and one does not use felony-misdemeanor classification.[6]

But there is a difference between a poor parent who applies for too many food stamps, and a sophisticated fraudster who schemes to systematically bilk Medicare of millions. Many people would more quickly condemn the latter as "unvirtuous." Range submits that the better point of reference would be those jurisdictions that, like Pennsylvania, understand that distinction. Indeed, the focus here is not on what the maximum theoretical charge might have been, but on what Range was convicted of. Barely over half the states, 26, today specify that making false statements to procure public assistance is a felony offense on Range's facts.[7] Eight jurisdictions that criminalize

---

[4]Colo. Rev. Stat. § 18-4-401(2)(f); Conn. Gen. Stat. §§ 17b-97, 53a-122; Del. Code Ann. tit. 11, §§ 841(c), 843; Idaho Code §§ 18-2408, 56-227(1); Iowa Code §§ 714.8(3), 714.10; Kan. Stat. Ann. §§ 21-5801, 39-720; La. Rev. Stat. Ann. §§ 14:67, 46:114; Minn. Stat. § 256.984; Mo. Rev. Stat. §§ 205.967, 570.030; Mont. Code Ann §§ 45-6-301, 53-2-107; N.D. Cent. Code §§ 12.1-23-02, 05; Va. Code Ann. §§ 18.2-95, 63.2-522.

[5]Tex. Penal Code § 31.03(e)(3); Wis. Stat. § 943.20(3)(a).

[6]N.J. Stat. Ann. § 2C:20-4, theft by deception, is a "third degree crime," *id.* 2C:20-2(b)(2), punishable by 3-5 years imprisonment, *id.* § 2C:43-6(a)(3).

[7]Ala. Code § 13A-9-150(e); Ariz. Rev. Stat. § 46-215(F); Ark. Code Ann. § 5-36-202(c)(2); Fla. Stat. § 414.39(5)(b); 305 Ill. Comp. Stat. Ann. § 5/8A-6(a)(3); Ind. Code § 35-43-5-7(b); Ky. Rev. Stat. Ann. § 205.8463(5); Mich. Comp. Laws Ann. 400.60; Miss. Code Ann. § 97-19-71; Neb. Rev. Stat. Ann. § 68-1017; Nev. Rev. Stat. Ann. § 422.410; N.H. Rev. Stat. Ann. §§ 167:17-b, 17-c; N.M. Stat. Ann. § 30-40-1; N.Y. Penal Law § 158.10; N.C. Gen. Stat. § 108A-53; Okla. Stat. Ann. tit 56, § 185; 62 Pa. C.S. § 481; R.I. Gen. Laws § 40-6-15; S.C. Code Ann. § 16-13-430(C)(2); S.D. Codified Laws §§ 22-29-11, 16; Tenn. Code Ann. § 71-5-314; Utah Code Ann. § 76-8-1206(1)(b); Vt. Stat. Ann. tit. 33, §§ 141, 143(a)(2); Wash. Rev. Code Ann. § 74.08.331; W. Va. Code Ann. § 9-5-4(2)(b); Wyo. Stat. Ann. § 42-2-112(k).

Range's behavior would treat him as a misdemeanant,[8] a ninth would likely treat him as a misdemeanant,[9] and one state would likely not convict Range of anything, as diversion is built-in to the statute for first offenders.[10]

That twenty-six jurisdictions would distinguish Range's particular offense from other forms of theft, yet still consider it a felony, is not nothing. But it is short of a "consensus." And even if one takes the broader view and gives the government this final prong of the seriousness test, Range makes his step one burden by satisfying the four other factors—the "primary," "generally conclusive" element of classification, *Foljatar*, at *18, *9; non-violence; lack of dangerousness; and a very lenient sentence.

B.      The Government Cannot Carry Its Step Two Burden.

In *Binderup*, the government failed to carry its step two burden because it could provide "no evidence explaining why banning people like [plaintiffs] (i.e., people who decades ago committed similar misdemeanors) from possessing firearms promotes public safety." *Binderup*, 836 F.3d at 353-54. That failure repeats itself, with an added twist.

---

[8]Alaska Stat. § 47.25.985; Cal. Wel. & Inst. Code § 10980(a); D.C. Code § 4-218.01(a); Haw. Rev. Stat. § 346-34(h); Me. Rev. Stat. Ann. tit. 22, § 4315 ("Class E Crime" punishable by 6 months imprisonment per Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E)); Md. Code Ann., Crim. Law § 8-504(c); Mass. Gen. Laws ch.18, § 5b; Ohio Rev. Code §§ 2921.13(A)(4), (F)(1).

[9]Oregon provides that the offense of "unlawfully obtaining public assistance," Or. Rev. Stat. Ann. §§ 411.630, is a felony that can be reduced to a misdemeanor, *id.* § 411.990(2), if "[t]he court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that a felony conviction would be unduly harsh." *Id.* § 161.705(1)(b).

[10]Ga. Code Ann. § 49-4-15(e). Diversion is also available in other states, including Pennsylvania. Had Range been represented by counsel, he would have more likely avoided conviction.

To address the government's persistent complaints (rejected by the Third Circuit) that as-applied challenges should not be recognized because it is too difficult to investigate a challenger's fitness to possess firearms, Range agreed that discovery be allowed, and fully cooperated in that process. Of course discovery is a two-way street, and so Range asked the government for its step two evidence. The government claimed it had such evidence, but refused to provide it as required notwithstanding multiple written requests.

Range asked the government to admit that it lacked information suggesting he posed a firearms risk, that making a false statement in procuring public assistance does not signal a firearms risk, and that if his misdemeanor offense were not a serious crime, that he would be entitled to relief from Section 922(g)(1)'s application. The government denied all three requests. Exh. C. That obligated the government to identify the information supporting its denials, but the government refused to do so, going so far as to object that whether Range is irresponsible with firearms, or would pose a heightened risk by possessing firearms, is *irrelevant* to the case. Exh. D. Counsel repeatedly met and conferred over this refusal, but the government has produced nothing as of the deadline for this filing.

Given the shortness of the calendar and the fact that Range was not seeking evidence with which to carry his own burden, counsel opted not to burden the Court, themselves, and opposing counsel with a discovery dispute, especially during the holiday season. But step two is now before the Court. If the Court wonders why Range cannot anticipate and address the government's step two claims, it is because the government took the position in discovery that step two is itself irrelevant.

The matter should be treated as conceded. But Range nonetheless submits that he is a law-abiding, responsible citizen. He works. He is committed to his family. He has no record of violence or of irresponsibility with weapons. He has no meaningful criminal history beyond the misdemeanor

14

conviction. And there is no logical reason to suppose that making false statements in connection with a food stamp application suggests a firearms risk. Even if such a claim could be made, any discussion of Range's propensity for violence must begin and end with his nearly thirty years of peaceful behavior. "[T]he passage of time since a conviction can be a relevant consideration in assessing recidivism risks." *Binderup*, 836 F.3d at 354 n.7. Speaking of one of the successful *Binderup* challengers, twenty-six years after his misdemeanor conviction, the Third Circuit noted that "[c]ommon sense tells us that recidivism rates would change with the passage of [time] and vary based on the circumstances of the prior conviction." *Id.* at 355. Twenty-six years following Range's conviction for a nonviolent, non-dangerous misdemeanor offense that garnered no jail time, the notion that he would recidivate with, for the first time ever, a violent offense, is far-fetched.

## II.   BRYAN RANGE IS ENTITLED TO RELIEF FROM SECTION 922(G)(1)'S ENFORCEMENT BECAUSE HE IS NOT DANGEROUS.

By prevailing at step two under Judge Ambro's controlling two-step test, Range necessarily prevails under the alternative analysis, which holds that "[t]he historical touchstone is danger, not virtue." *Folajtar*, 2020 U.S. App. LEXIS 37006, at *32 (Bibas, J., dissenting). There is no need to reargue the matter of Range's peaceable nature and lack of risk.

Range hopes, but cannot presume, that his case will end favorably in this Court. Because the case may yet be heard by a court authorized to change Third Circuit precedent, Range respectfully preserves the argument persistently endorsed by Judges Hardiman and Bibas, and now-Justice Barrett: the Second Amendment does not permit the government to disarm people whose possession of arms would not pose any heightened risk to society. The Second Amendment's framers understood that "the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed." *Binderup*, 836 F.3d at 369 (Hardiman, J.,

15

concurring) (footnote omitted). The focus must be on an individual's "propensity for violence." *Id.* at 374. "[F]ounding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." *Kanter*, 919 F.3d at 458 (Barrett, J., dissenting). The "virtuousness" rationale underlying the prevailing approach is ahistorical—"flimsy," *Folajtar*, 2020 U.S. App. LEXIS 37006, at *51 (Bibas, J., dissenting), and "fall[ing] somewhere between guesswork and *ipse dixit*." *Binderup*, 836 F.3d at 372 (Hardiman, J., concurring). The two-step virtuousness-based method is currently the law, but Range would be remiss if he did not reserve the right to argue further against it. Fortunately for Range, he need not do so to prevail here.

CONCLUSION

The Court should grant Bryan Range's motion for summary judgment.

Dated: January 15, 2021     Respectfully submitted,

By: /s/ Alan Gura_____  By: /s/ Michael P. Gottlieb_____
   Alan Gura*           Michael P. Gottlieb
   Gura PLLC           PA Bar No. 36678
   916 Prince Street, Suite 107    319 Swede Street
   Alexandria, VA 22314      Norristown, PA 19401
   703.835.9085/Fax 703.997.7665  610.279.4200
   alan@gurapllc.com        Mikem1a1@aol.com

   *Admitted pro hac vice       Attorneys for Plaintiff

16