IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN DAVID RANGE, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 20-cv-3488 |
| : | |
| MONTY WILKINSON, : | |
| Acting Attorney General of the United States, : | |
| REGINA LOMBARDO, : | |
| Acting Director, Bureau of : | |
| Alcohol, Tobacco, Firearms, and Explosives, : | |
| : | |
| Defendants. : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bryan David Range asks this Court to declare that his conviction for stealing public assistance money is not a serious crime. But the factors announced in *Binderup v. Att'y Gen. of U.S.*, 836 F.3d 336 (3d Cir. 2016) (*en banc*) reveal that Range's crime is serious: the offense involves conduct that the Third Circuit has described as a "serious" act, the legislature punishes the offense far beyond the traditional felony, all jurisdictions ban Range's conduct as criminal, and at least 41 other jurisdictions treat that conduct as a felony. Moreover, despite his disqualification under section 922(g)(1), Range for years acquired and possessed firearms through straw purchases. For these reasons, the Court should deny Range's motion for summary judgment and grant the Government's motion for summary judgment.

**A. Despite Range's pleas, the Court must evaluate the seriousness of his fraud offense, not Range's propensity for violence**.

Range asks this Court to do something it cannot: to disregard rulings by the Third Circuit that hold Second Amendment challenges must be evaluated on the seriousness of the disqualifying offense, and to install a new test that focuses on Range's personal "propensity of violence." *See* Range Memorandum of Law in Support of his Motion for Summary judgment ("Memo.") at 5-6. The en banc Third Circuit in *Binderup* rejected Range's proffered test focused on his "dangerousness," 836 F.3d at 351; *id.* at 390-91 (J. Fuentes concurring in part), which the court subsequently reaffirmed in *Folajtar*, 980 F.3d 897, 902-03 (3d Cir. 2020) and *Holloway v. Attorney General*, 948 F.3d 164, 171 (3d Cir. 2020). In support of his position, Range cites two dissenting opinions and petitions for certiorari. In other words, no court majority has adopted the standard for which Range presses here.[1]

As explained in its own motion for summary judgment, which the government incorporates by reference, "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." *Schrader*, 704 F.3d at 991 (quoting *Skoien*, 614 F.3d at 641). "*Heller* did not suggest that disqualifications would be effective only if the statute's benefits are first established by admissible evidence." *Skoien*, 614 F.3d at 641. Rather, "the Second

---

[1] Range even raises his argument about the appropriate standard in a Second Amendment challenge to 18 U.S.C. § 922(g)(1) in the guise of an alleged discovery dispute. *See* Memo. at 14-15. As explained above, neither the Third Circuit nor the government subscribe to Range's standard. At step one in *Holloway v. Att'y Gen. of U.S.*, the Court looked to the seriousness of the offense, and not to the dangerousness of the challenger. 948 F.3d 164, 173-74 (3d Cir. 2020) (concluding that the drunk driving offense was no less serious for its lack of a formal element of violence). In *Binderup*, at the second step, a plurality of the court evaluated the application of section 922(g)(1) to the challengers under immediate scrutiny and asked whether the government presented "evidence explaining why banning *people like them*" promotes the government's interest. *See* 836 F.3d at 353-54 (emphasis added). No individual assessment was required. But Range's point is still moot. Range concedes that he neglected to raise the dispute over the proper scope of discovery with this Court. He cannot have it both ways by acknowledging his failure to pursue the issue, while asking for the Court to provide him the leniency of a government concession.

Amendment permits categorical regulation of gun possession by classes of persons . . . rather than requiring that restrictions on the right be imposed only on an individualized, case-by-case basis." *Booker*, 644 F.3d at 23 (citation omitted).

While Congress previously permitted individuals to obtain relief from section 922(g)(1) by demonstrating to the ATF that they would "not be likely to act in a manner dangerous to public safety," 18 U.S.C. § 925(c), Congress abandoned that regime in 1992 after concluding that it presented "a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made," S. Rep. No.102-353, at 19. And in declining to allow individuals to seek section 925(c) relief directly in the courts, the Supreme Court explained that the judiciary is not "institutionally equipped for conducting a neutral, wide-ranging investigation" into an individual's dangerousness, which would necessarily call for an "inherently policy-based decision." *United States v. Bean*, 537 U.S. 71, 77 (2002). Therefore, the Second Amendment does not require courts to engage in an ad hoc and standardless inquiry into individual dangerousness as a prerequisite for section 922(g)(1)'s application.

Even if the government had to meet Range's proposed standard, Range's receipt of two firearms from straw purchases—unlawful gun transactions—would justify the government's reasonable approach to prohibit him from owning firearms. *See* Range Dep. Trans. pp. 21-22:21-17; *Abramski v. United States*, 573 U.S. 169, 193 (2014). While Range might attempt to minimize his behavior or allege rehabilitation, he cannot reasonably deny that his conduct, which occurred more recently than his disqualifying conviction, places him within a narrower category of "presumptively risky people" whom Congress sought to disarm—the only relevant question here. *Binderup*, 836 F.3d at 370 (citation omitted).

B. **Range fails to show that his welfare fraud conviction is not serious**.

Range's challenge proves equally unsuccessful under application of the appropriate standard. As explained in the government's summary judgment motion, Range cannot meet the first step of the *Binderup* analysis. In support of his claim that his welfare fraud conviction is not serious, Range misstates the holding of *Folajtar*. Contrary to Range's assertion, the *Folajtar* court did not find the crime's label is "generally dispositive," but declared that a *felony* label is generally dispositive in favor of finding a crime to be serious. *See* 980 F.3d at 902-03, 910. Range argues that because the felony label is "generally dispositive" as serious, then the misdemeanor label must be "generally dispositive" in his favor. Memo. at 9. But Range commits the argumentative misstep of denying the antecedent: *Folajtar*'s holding that a felony label is "generally conclusive" that a crime is serious, does not mean that the absence of that label means the crime is not serious.

While the *Folajtar* Court did not opine on misdemeanor cases, *see id.* at 903, *Binderup* left "[n]o doubt" that "some misdemeanors are serious offenses." 836 F.3d at 351 (Ambro, J.) Accordingly, the Third Circuit in *Holloway* rejected an as-applied challenge by a Pennsylvania misdemeanant who pleaded guilty to a drunk driving offense, notwithstanding that only 12 jurisdictions punished that offense as the functional equivalent of a felony. 948 F.3d at 178; *id.* at 187 (Fisher, J., dissenting). In so holding, the court of appeals cautioned that the difference between felony and misdemeanor offenses is "minor and often arbitrary . . . [and] some states do not use the distinction at all." 948 F.3d at 174 (internal citations and quotations omitted). And the court emphasized that it is "the maximum possible punishment" that is "probative of a misdemeanor's seriousness." *Id.* at 175 (quoting *Binderup*, 836 F.3d at 352). In sum, the Third Circuit has treated felonies and misdemeanors differently and found that while felonies almost

4

categorically foreclose a successful Second Amendment Challenge, misdemeanor crimes, too, can be equally serious. *Compare Folajtar*, 980 F.3d at 902-03 and *King v. Att'y Gen. of U.S.*, 783 F. App'x 111 (3d Cir. Jul. 25, 2019) *with Holloway*, 948 F.3d at 174-75 and *Bindeurp*, 836 F.3d at 352.

Range's fraud crime of "willfully depriv[ing] the Government of its property" is "no less serious than larceny, one of the nine common law felonies, or forgery, one of the first felonies in the United States." *Folajtar*, 980 F.3d at 910. And while Range relies heavily on the misdemeanor label in support of his position, the Commonwealth imposes a punishment of up to five years in prison for securing public assistance through willfully making a false statement, *see* 62 Pa. C.S.A. §§ 481 (a) & (b). The Pennsylvania legislature chose to punish Range's offense far beyond a traditional felony, forgoing classification as a misdemeanor of a lesser degree, or even a "summary offense." *See id.* (first degree misdemeanor punishable by five years, second degree by two years, and third degree by one year); *id.* § 1105 (summary offense punishable by 90 days). That substantial imprisonment term "reflects the serious of the offense" despite the misdemeanor label. *See Holloway*, 948 F.3d at 176 & n.14 (citation omitted) (finding that the maximum penalty of up to five years' imprisonment for DUI, irrespective of its misdemeanor label, reflected the seriousness of the offense). Furthermore, as Range points out (Memo. at 10 n.3), the Pennsylvania legislature lowered the felony threshold for a violation of 62 Pa. C.S. § 481 to $1,000. While Range implores the Court to ignore this fact,[2] the change by the Pennsylvania General Assembly further confirms the legislature's opinion that welfare fraud is a serious crime.

---

[2] In support of this argument, Range cites dicta in a non-binding district court opinion, *United States v. Irving*, 316 F. Supp. 3d 879, 890 (E.D. Pa. 2018). But the facts in *Irving* are readily distinguishable from the facts here. In

5

C.  **The cross-jurisdictional nexus firmly reveals the seriousness of Range's crime**.

Range also misconstrues the cross-jurisdictional nexus by drawing an arbitrary distinction between jurisdictions that have a discrete crime for Range's conduct and jurisdictions that rely upon traditional statutes for fraud or theft. That distinction has no basis in principled reason, nor circuit precedent, and Range offers neither. At base, fraud and theft are serious crimes and Range cannot be successful at *Binderup*'s first step.

Substantively, a comparison of the government's and Range's analyses reveals no significant divide. Range and the government agree that at least 37 jurisdictions treat Range's conduct as a felony. *See* Memo at 11-13 & Gov't Exhibit 1 to its Memorandum in Support of Summary Judgment.[3] That agreement alone is sufficient for this factor to fall in the government's favor. Range, however, incorrectly claims that Wisconsin and Massachusetts would label his crime a misdemeanor. Wisconsin law clearly states that a theft from their food stamp program between $100 and $5,000 is a Class I felony, *see* Wis. Stat. Ann. §§ 946.92(2)(a), (3)(a)2. Range, by contrast, relies on a more general theft statute. *See* Memo. at 12 n.5 (citing Wis. Stat. § 943.20(3)(a)). By attaching the felony label to its food stamp fraud

---

*Irving*, the defendant was charged with drug offenses and a violation of 18 U.S.C. § 922(g)(1)'s felon-in-possession ban. *Id.* at 882. Irving's felon-in-possession charge was severed from his drug counts after the *Binderup* decision and Irving proceeded to trial on the drug counts only. *Id.* After Irving was convicted on the drug counts, the government requested the Court take his drug convictions into consideration in the pending felon-in-possession trial. *Id.* at 890. The Court refused to consider the most recent conviction on drug charges when Irving had been indicted on the felon-in-possession charge before the guilty verdict. *Id.*

Here, the court's inquiry is not the sufficiency of the predicate crime to a criminal indictment, but to distill the gravity with which Pennsylvania's General Assembly would treat Range's crime. As the *Binderup* plurality noted, "there are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." 836 F.3d at 351. The court also recognized that "the category of serious crimes changes over time as legislative judgments regarding virtue evolve." *Id.* In evaluating the severity of Range's crime, the Pennsylvania legislature's current classification of that offense is relevant to the Court's analysis.

[3] The government notes an error in its initial analysis related to Hawaii and Ohio. Both jurisdictions would treat Range's conduct as misdemeanors. *See* Ohio Rev. Code. Ann. § 2921.13(A)(4), (F)(1); Haw. Rev. Stat. § 346-34(h).

statute, the Wisconsin legislature had made the determination that the type of fraud and theft committed by Range is particularly egregious and deserving of more severe punishment.

Range also incorrectly claims that Massachusetts would call his crime a misdemeanor, but the Commonwealth of Massachusetts punishes food stamp fraud that exceeds a value of $100 as a felony. *See* Mass. Gen. Stat. ch. 18, § 5K. Accordingly, at least 39 jurisdictions label obtaining public assistance by fraud as a felony. A clear majority not only criminalize Range's conduct, but label it the serious crime of a felony.

In addition, Range assumes, without evidence, that Oregon would lower his crime from a felony to a misdemeanor. *See* Memo at 13 & n.9. Similarly, Range assumes, without evidence, that his charge would have been diverted in Georgia and he would not be convicted at all. But both Oregon and Georgia label the crime analogous to Pennsylvania's public assistance fraud statute as felonies. *See* Ga. Code Ann. § 49-4-15; Or. Rev. Stat. § 411.840. This Court cannot presume what decisions prosecutors or judges in Oregon and Georgia might have made. Rather, the Court is to look at the label of the applicable statute to determine if that conduct rises to the level of a felony. In both Oregon and Georgia, such conduct clearly rises to the felonious level. Unlike the conduct at issue in *Binderup*—which was legal in some states— at least 41 jurisdictions finding Range's conduct to be, not just criminal, but a felony. *See Binderup*, 836 F.3d at 352-53. So, the cross-jurisdictional nexus falls firmly in the government's favor.

As the Third Circuit suggested in *Binderup*, absent even one of the indications that a crime is not serious, the plaintiffs in *Binderup* could not "have distinguished their

---

Even allowing for these two states, as discussed *infra*, Range has misappropriated both Wisconsin and Massachusetts in his analysis and, therefore, the cross jurisdictional nexus is still strongly in the government's favor.

circumstances from those of persons historically excluded from the right to arms." *Binderup*, 836 F.3d at 353 (Ambro, J.); *see generally, Holloway*, 948 F.3d 164 (finding challenger's crime sufficiently serious despite three of the four factors falling in challenger's favor). Addressing the cross-jurisdictional consensus, specifically, the *Binderup* Court noted that, "[w]ere [the plaintiffs] unable to show that so many states consider their crimes to be non-serious, it would be difficult for them to carry their burden." 836 F.3d at 353 (Ambro, J.).

### D.  Conclusion

Range has failed to demonstrate that a critical mass of jurisdictions would treat his conduct as nonserious. Accordingly, this Court should deny Range's motion for summary judgment and grant the government's cross-motion for summary judgment.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney

s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

s/ Paul J. Koob
PAUL J. KOOB
ERIC D. GILL
Assistant United States Attorneys
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476
215-861-8432/8250 (phone)
215-861-8618 (facsimile)
Paul.Koob@usdoj.gov
Eric.Gill@usdoj.gov

*Attorneys for Defendants*

Dated: February 5, 2021

## CERTIFICATE OF SERVICE

    I certify that on this day, the foregoing "Opposition to Plaintiff's Motion for Summary Judgment" and supporting documents were filed electronically and are available for viewing and downloading from the court's ECF system.

Dated: February 5, 2021                                            s/ Paul J. Koob
                                                                                        PAUL J. KOOB
                                                                                        Assistant United States Attorney