IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN DAVID RANGE, | Case. No. 5:20-CV-03488-GEKP |
| Plaintiff, | |
| v. | |
| ROBERT M. WILKINSON, Acting Attorney General of the United States, et al., | |
| Defendants. | |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. On August 8, 1995, in the Court of Common Pleas of Lancaster County, Pennsylvania, Range pled guilty to making a false statement to fraudulently obtain public assistance. Compl. ¶ 7.

   a.   Admitted.

2. Specifically, he falsified his income when he and his wife jointly applied to receive approximately $2,458 in welfare assistance in violation of 62 Pa. C.S.A. § 481(a). Id.

   a.   Denied.

   b.   *Range and his former wife did not specifically apply to receive $2,458 in welfare assistance. Rather, that is the excessive amount the couple received over a period of time on account of their application's incorrect income statement. Moreover, Range did not "falsify" his income, to the extent the government suggests that he deliberately presented an incorrect*

*figure. Rather, Range's application did not disclose income, as required. The crime was one of omission, not creation. Range did not prepare the document, but he did, and does, take responsibility for signing and submitting it. Compl. ¶¶ 7, 9-10; Range Decl., ¶¶ 3-5; Range Dep. T. ("T.") 33:7-17; 34:16-20; 44:9-17; 46:10-47:3.*

3. The Court of Common Pleas sentenced him to three years of probation; he was assessed a $100 fine, $288.29 in costs and eventually paid $2,458 in restitution. Compl. ¶ 9.

   a. *Admitted.*

4. Under Pennsylvania law, Range's crime was graded as a first-degree misdemeanor, which is punishable by up to five years' imprisonment. See 18 Pa. C.S.A. § 1104(1); Compl. ¶¶ 7-8.

   a. *Admitted.*

5. In the attached survey, *forty-two* states treat welfare fraud in the amount Range stole to be a felony, in many cases punishable by a year or more in prison. *See Defendants' 50 State Survey*, attached hereto as Exhibit 1.

   a. *Denied as to the survey's accuracy; admitted only to the extent that the government correctly describes its survey's claims.*

   b. *The government misclassifies seven states. As described below, it classifies three misdemeanor states as having a felony classification; one likely misdemeanor state has having a felony classification; one state where Range would likely not have been convicted as having a felony*

*classification; and two states that have a felony classification as misdemeanor jurisdictions.*

*1. The government asserts that Hawaii would treat Range's offense as a felony, based on Haw. Rev. Stat. § 346-34. That is incorrect. Range's conduct would have been covered by subdivision (c) of that section, violation of which is a **misdemeanor** under subdivision (h). The felony provisions of subdivision (h) upon which the government relies refer to violations of subdivisions (d)(2) and (e), which relate to food stamp trafficking, a different offense.*

*2. The government asserts that Massachusetts would treat Range's offense as a felony, based on Mass. Gen. Laws ch. 274, § 1; and Mass. Gen. Laws ch. 18, §§ 5B, 5K, and 5L. That is incorrect. Sections 5K and 5L cover theft from the state and food stamp trafficking, respectively. Range's offense, supplying inaccurate information to obtain benefits, falls under Section 5B, which provides for "imprisonment for not more than one year." The statute does not specify that imprisonment would be in state prison. "In the absence of reference to State prison as the place of confinement, the statute does not, in the first instance, describe a felony." Commonwealth v. Zawatsky, 41 Mass. App. Ct. 392, 395; 670 N.E.2d 969 (1996); accord DiMasi v. Galvin, 2020 Mass. Super. LEXIS 102, at \*12 n.11, 2020 WL 3619939 (Mass. Sup. Ct. Suffolk Jul. 2, 2020) ("Where a statute does not expressly state whether a given crime is punishable by*

*confinement in state prison (as opposed to a house of correction), the court looks to the term of confinement the statute prescribes."). Because people may be imprisoned in a "house of correction" for up to two and a half years, Mass. Gen. Laws ch. 279, §§ 19, 23, a conviction under ch. 18, § 5B is classified as a **misdemeanor** under ch. 274, § 1.*

*3. The government asserts that Ohio would treat Range's offense as a felony, based on Ohio Rev. Code Ann. § 2921.46. That is incorrect. Section 2921.46(B) prohibits food stamp trafficking, a different offense. Range's conduct would be covered by Section 2921.13(A)(4), making a false statement "to secure the payment of . . . benefits administered by a governmental agency or paid out of a public treasury," which is a **misdemeanor** per Section 2921.13(F)(1).*

*4. The government asserts that Oregon would treat Range's offense as a felony, based on Or. Rev. Stat. Ann. § 411.840. That is unlikely. Section 411.840 relates to food stamp trafficking, a different offense. Range's conduct would be covered by Section 411.630, "unlawfully obtaining public assistance." Violation of either section is punishable as either a felony or as a misdemeanor, pursuant to Section 411.990(2), if "[t]he court, considering the nature and circumstances of the crime and the history and character of the defendant, believes that a felony conviction would be unduly harsh." Section 161.705(1)(b). Considering Range's circumstances, the fact that this was his first (and*

*only) offense, and the court's lenient disposition, it is doubtful that an Oregon court would have classified his conviction as a felony.*

*5. The government asserts that Georgia would treat Range's offense as a felony, based on Ga. Code Ann. § 49-4-15. That is unlikely. Subdivision (e) provides that prosecutor may defer prosecution upon the filing of a restitution agreement. "Upon successful completion of the terms and conditions of the consent agreement, criminal prosecution of the individual for such offense shall be barred . . . [t]he successful completion of the terms and conditions of the agreement shall not be considered a criminal conviction." Ga. Code Ann. § 49-4-15(e)(3). Considering Range's circumstances, and the fact that he made full restitution, it is unclear whether he would have been convicted of anything under Georgia law.*

*6. The government classifies South Dakota as a misdemeanor jurisdiction under S.D. Codified Laws § 28-13-16.2, which punishes the making of false statements to county welfare officials. But as food stamps are administered by the state government, the correct provisions are apparently S.D. Codified Laws §§ 22-29-11, 16, which create a felony.*

*7. The government classifies Pennsylvania as a misdemeanor jurisdiction, notwithstanding the recent amendments of 2018 Pa. Act 125, § 5 (Oct. 24, 2018), which would make Range's offense a felony if it were committed today.*

6. The amount of welfare fraud that triggers felony status varies, with some states treating a $100 violation as a potential felony, and others $2,500. *Id.* (see Arkansas statutory threshold at $100 or more and Colorado statutory threshold at $2,500).

   a. Admitted.

7. By contrast, *only seven* states treated a similar crime as a misdemeanor, and one state was equivocal in its treatment. *See* Exhibit 1.

   a. Denied.

   b. *Eight states and the District of Columbia would clearly treat Range's offense as a misdemeanor. Alaska Stat. § 47.25.985; Cal. Wel. & Inst. Code § 10980(a); D.C. Code § 4-218.01(a); Haw. Rev. Stat. § 346-34(h); Me. Rev. Stat. Ann. tit. 22, § 4315 ("Class E Crime" punishable by 6 months imprisonment per Me. Rev. Stat. Ann. tit. 17A, § 1604(1)(E)); Md. Code Ann., Crim. Law § 8-504(c); Mass. Gen. Laws ch. 18, § 5B; Ohio Rev. Code §§ 2921.13(A)(4), (F)(1); Tex. Penal Code § 31.03(e)(3).*

   *Oregon would likely treat Range's offense as a misdemeanor. Or. Rev. Stat. Ann. §§ 161.705, 411.630. 411.990(2). Since Range agreed to, and did in fact, make full restitution, he would likely not have been convicted in Georgia. Ga. Code Ann. § 49-4-15(e)(3).*

8. Range claims to be ignorant that his conviction prevented him from owning a firearm until years later. See December 30, 2020 Deposition of Bryan David Range ("Range Dep.") at 17-18, 20-21, excerpts attached hereto as Exhibit 2.

   a. *The sentence is unclear, and therefore denied.*

   b. *Range was, in fact, unaware that he was subject to Section 922(g)(1) on account of his misdemeanor conviction. Range was not represented by counsel during his prosecution. Range Decl., ¶ 11; Range Exh. A; Range Dep. T. ("T.") 35:21-36:6. The court never advised him of the federal prohibition. Range Decl., ¶ 12; T. 36:7-12. Range was also misled by gun store employees to believe that he was not prohibited from possessing firearms, as he had not committed an enumerated prohibiting offense. Range Decl., ¶ 13; T. 18:22-19:4, 19:18-21.*

9. However, he was prevented from purchasing a hunting rifle in 1998. Range Dep. 18-19.

   a. *Denied.*

   b. *Range admits that he was prevented from purchasing a hunting rifle in 1998, but to the extent the government introduces this fact with "however," suggesting that this fact informed Range that he was prohibited from having guns, the statement is false. Range was advised that the denial was a typical error because he did not commit a crime enumerated on a list of prohibiting offenses. Range Decl., ¶ 13; T. 18:22-19:4, 19:18-21.*

10. Specifically, Pennsylvania's Instant Check System ("PICS") prevented Range from buying the rifle at a gun store. *Id.*

    a. Admitted.

11. Shortly thereafter and knowing that the PICS system had denied him the ability to purchase a rifle, his wife circumvented that denial by buying the hunting rifle for him. Range Dep. 14-16; 21-22.

    a. *Denied.*

    b. *Plaintiff renews the objection to the deposition question whose answer is relied upon here, that the question called for the witness to speculate as to his wife's knowledge of his legal status. T. 22:1-6. Moreover, Range himself did not know that he was legally prohibited from purchasing guns. See responses to government proposed "facts" 8 and 9. Furthermore, Range testified that he and his wife reviewed a list of prohibiting offenses, knew that Range had not committed any such offenses, and believed that his purchase denials were, as gun store employees advised Range, erroneous. T. 22:12-20. Finally, the rifle was purchased as a gift. T. 14:2-4, 16:14-16, 17:4-7. Range's wife did not "circumvent" anything.*

12. Range possessed that hunting rifle and a shotgun until he lost both firearms in a house fire in 2006. Range Dep. at 15.

    a. Admitted.

13. After the fire and knowing that he could not legally purchase a firearm because of the PICS system, Range's wife bought him another hunting rifle. Range Dep. at 16-17.

    a. Denied.

    b. *Range's wife gifted him a firearm after the fire, but neither she nor Range knew that Range could not legally purchase a firearm. Range was never advised of the prohibition, and had been repeatedly told that his purchase denials were erroneous because he did not commit any specifically enumerated prohibiting offense. See responses to government proposed "facts" 8, 9, 11.*

14. He possessed that rifle for a few years of ownership before selling it to a gun shop. Range Dep. at 15-16.

    a. Admitted.

    b. *Range sold the rifle immediately upon learning that he was prohibited from possessing it, and has since refrained from possessing firearms for that reason. Range Decl., ¶¶ 14, 15; T. 16:4-6.*

15. Finally, in 2011, Range violated the law again. Range committed summary offenses of making a false statement and fishing without a license. Range Dep. Tr. at 37-39.

    a. *Admitted*.

16. He paid a summary fine of $200. *See* Plaintiffs' Response to Defendants' Interrogatories at 3-4, excerpts attached hereto as Exhibit 3.

    a. *Admitted.*

Dated: February 5, 2021                             Respectfully submitted,

By: /s/ Alan Gura                            By:   /s/ Michael P. Gottlieb
    Alan Gura*                                      Michael P. Gottlieb
    Gura PLLC                                        PA Bar No. 36678
    916 Prince Street, Suite 107                     319 Swede Street
    Alexandria, VA 22314                             Norristown, PA 19401
    703.835.9085/Fax 703.997.7665                    610.279.4200
    alan@gurapllc.com                                Mikem1a1@aol.com

    *Admitted pro hac vice                           Attorneys for Plaintiff