IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRYAN DAVID RANGE, | : |
| Plaintiff, | : |
| v. | : Civil Action<br>No. 20-cv-3488 |
| MONTY WILKINSON,<br>Acting Attorney General of the United States,<br>REGINA LOMBARDO,<br>Acting Director, Bureau of<br>Alcohol, Tobacco, Firearms, and Explosives, | : |
| Defendants. | : |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

In *District of Columbia* v. *Heller,* 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects "the right of law abiding, responsible citizens" to possess handguns for self-defense. *Id.* at 635; see *id.* at 592 (recognizing an "individual right to possess and carry weapons in case of confrontation"). That right, tied to the concept of a virtuous citizenry, is the bedrock of the *Binderup* analysis' first step. *Binderup v. Att'y Gen. of the U.S.*, 386 F.3d 336, 351 (3d Cir. 2016) (en banc)). While Range decries the government's brief for "spend[ing] much time discussing . . . the virtuousness-based theory underlying the current approach to as-applied challenges," (Plaintiff's Memo. of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Opp. Br.") at 1), his approach attempts to obscure that important foundation. The Court's task is to determine if

individuals who commit fraud, like Range, engaged in "serious" crimes and are, therefore, unvirtuous. *See Binderup*, 386 F.3d at 348.

I. **Range falls outside the bounds of the virtuous citizenry because he engaged in the serious crime of fraud.**

    A. **Range wrongly overemphasizes the misdemeanor classification of his fraud crime**.

Range relies heavily on the classification of his offense in support of his argument. Opp. at 4. But Range sweeps too broadly when he claims that "classification counts a great deal because it expresses the legislature's view." Opp. Br. at 4. Part of the Court's step one inquiry is determining how a state legislature views an offense. *See Holloway v. Attorney Gen. United States*, 948 F.3d 164, 174 (3d Cir. 2020). But Range incorrectly posits that in evaluating a Second Amendment challenge to 18 U.S.C. § 922(g)(1), courts place extraordinary weight on the underlying conviction's classification.

As the government argued in its opposition to Range's summary judgment motion, the *Folajtar* court did not find any crime's label to be dispositive, but declared that a *felony* label is generally dispositive in favor of finding a crime to be serious. *See* 980 F.3d at 902-03, 910. Range argues that because the felony label likely yields a finding that the underlying conviction is serious, then inversely, the misdemeanor label must indicate a lack of seriousness. Opp. Br. at 4. But Range attempts to extend *Folajtar*'s reasoning—that the felony label creates a near impossible hurdle for Second Amendment challengers— beyond its bounds in this misdemeanor case. *Folajtar*'s holding that a felony label is "generally conclusive" that a crime is serious has no logical bearing on whether a misdemeanor is serious.

The Third Circuit in *Holloway* cautioned about the overreliance on the misdemeanor label in evaluating the seriousness of an offense. While the court did rely, in part, on the

mandatory minimum sentence, it also noted that "the maximum penalty that may be imposed often reveals how the legislature views an offense," 948 F.3d 164, 175, and also explained that the maximum penalty for the disqualifying crime is more important than its label: "Combining the views of Judge Ambro's and Judge Fuentes' opinions, a majority of the *Binderup* court rejected the dissent's view [that "the potential prison term cannot nullify the relevance of the felony/misdemeanor distinction for determining whether a crime is 'serious'[.]" (Fisher, J., dissenting). *Holloway v. Attorney Gen. United States*, 948 F.3d 164, 176 n.13 (3d Cir. 2020). Indeed, plaintiff ignores that the *Holloway* court looked beyond the misdemeanor classification to hold that the challenger's misdemeanor crime was nevertheless disqualifying.

Here, as in *Holloway*, Range's crime at the time of conviction carried a five-year maximum term of imprisonment. *See* 62 Pa. C.S.A. §§ 481 (a) & (b) (West 1982). That substantial imprisonment term "reflects the seriousness of the offense" despite its misdemeanor label. *See Holloway*, 948 F.3d at 176 & n.14 (citation omitted) (finding that the maximum penalty of up to five years' imprisonment for DUI, irrespective of its misdemeanor label, reflected the seriousness of the offense).

    B. **Range's crime is serious despite its misdemeanor label**.

But even if Range were correct that the misdemeanor label carried the outsized weight he suggests, he would still lose at step one. Range concedes that in 2018, the Pennsylvania legislature lowered the felony threshold for a violation of 62 Pa. C.S. § 481 to $1,000. *See* Opp. at 12. As the *Holloway* court observed, "'the category of serious crimes changes over time as legislative judgments regarding virtue evolve," *id.* at 351, and here, the Pennsylvania legislature has demonstrated an evolution in judgment." *Holloway*, 948 F.3d at 175-76 (citing *Binderup v. Att'y Gen. of U.S.*, 386 F.3d 336, 351 (3d Cir. 2016) (en banc)). Here, too, the

Pennsylvania legislature has determined that the crime of welfare fraud is a serious crime such that it currently merits a felony label. To the extent any doubt existed about what the Pennsylvania legislature thought of the severity of Range's crime—already punished well-above a traditional felony level by imprisonment of up to five years—the subsequent amendment confirms that the legislature views welfare fraud as serious. Ranges provides no legal basis to explain how or why that amendment should be interpreted differently.

Despite Range's pleas to the contrary, fraud is regarded as a serious crime. Although *Folajtar* involved an offense labeled a felony, the court's analysis of the seriousness of tax fraud informs how fraud crimes should be viewed at the first step of the *Binderup* analysis generally. 980 F.3d at 910. The court noted that Folajtar signed a tax return that she knew to be false, and that such crime, "is no less serious than larceny, one of the nine common law felonies, or forgery, one of the first felonies in the United States." *Id.* The court also found that Folajtar's crime "necessarily entail[s] deceit" and "[t]hus, we can be confident that Folajtar's offense falls outside the scope of the Second Amendment's guarantee to possess firearms[.]" *Id.* (internal quotations and citations omitted). Like Folajtar, Range knowingly misrepresented his income to put funds rightfully belonging to the government into his own pocket. *See* Range's Response to Statement of Undisputed Materials Facts at ¶ 1. Range's crime bears no resemblance to "park[ing] his car while willfully ignoring the government's parking meter." *See* Opp. Br. at 6.[1] Rather, "[t]heft, fraud, and forgery are not merely errors in filling out a form

---

[1] Range endeavors on an historical journey in support of his premise that fraud crimes are not serious. On his way, he notes that such crimes faced corporal, and more often, capital punishment. Aside from the "clergy exception," which is inapplicable to Range, he also concedes that "theft and fraud were historically liable to be treated with relative severity, even if, like today, they were not universally so treated." Opp. at 7, 9 (emphasis removed). Suffice it to say that Range's historical analysis does not support his position that fraud crimes are not serious.

or some regulatory misdemeanor offense; these are significant offense reflecting disrespect for the law." *Hamilton v. Pallozzi*, 848 F.3d 614, 627 (4th Cir. 2017).[2] "American courts have, without exception, included [fraud] within the scope of moral turpitude." *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019) (citing *Jordan v. De George*, 341 U.S. 223, 229 (1951)). Accordingly, Range committed a serious crime; and he cannot satisfy his burden at step one.

Range also points to his lack of prison time in support of his view that his welfare fraud is not serious. But the *Holloway* court minimized the import of an individual prison sentence, explaining that: "the penalty imposed . . . does not necessarily reflect how the offense itself is viewed." 984 F.3d 164, 175 n.12. The first *Binderup* step "focuses on the offense and not the offender." *Id.* (citations omitted). Accordingly, Range's individual sentence bears little on this Court's analysis of the seriousness of welfare fraud. As discussed above, the severity of the available punishment at the time Range pleaded guilty, the nature of Range's offense, and the General Assembly's decision to upgrade the crime to a felony, reflect the seriousness of Range's crime.

Additionally, the cross-jurisdictional nexus confirms that Range's fraud crime is serious. There is no significant divide between Range's analysis and the government's review of the relevant jurisdictions. The government disagrees with Range's characterization of how

---

[2] Range strives to conjure a straw man in his discussion of *Hamilton v. Pallozzi,* 848 F.3d 614, 627 (4th Cir. 2017). Opp. Br. at 9. The government cited that case as one, among many, that have acknowledged that fraud is a serious crime and has been treated as such for centuries. *See* Govt Br. at 11. The government did not argue that that case "stands for the proposition that a court may disregard a state's classification of a fraud crime." Opp. Br. at 9. We agree that the Court should adhere to a state legislature's treatment of a crime, but the Court should pay careful attention to the maximum punishment that can be levied for a crime, not merely rely on the state's classification of the crime.

the jurisdictions of Hawaii, Massachusetts,[3] Georgia, Oregon, and Ohio would treat his conduct.[4] The parties now agree that at least 39 jurisdictions would not only criminalize Range's conduct, but also label it a felony. But Range argues—without justification—that more general fraud statutes should be excluded from this analysis. The government can find no support for this argument and Range offers none. Accordingly, at least 39 jurisdictions—and, the government respectfully submits that at least 41 jurisdictions support its conclusion—find Range's crime to be felonious.

II. **Even if Range could satisfy *Binderup's* first step, his challenge still falls short at the second step**.

Despite Range's claims to the contrary, the Third Circuit has not "rejected the relevance of the government's studies." Opp. Br. At 15. As the *Binderup* court explained, empirical studies can "demonstrate[ ] an appropriate fit between the Challenger['s] total disarmament and

---

[3] Range incorrectly cites to Mass. Gen. L. Ch. 18, § 5B in support of his argument that Massachusetts would treat his crime as a misdemeanor. Section 5B, upon which Range relies, applies to benefits from "the department of public welfare." The government, on the other hand, cites §5K which applies when someone "obtains by fraud any funds, assets or property provided by the *department of transitional assistance*[.]" Mass. Gen. L. Ch. 18, § 5K. In 1995, Massachusetts revised its public welfare statutes and created the Department of Transitional Assistance (DTA). This department serves as the administrator for food assistance benefits. *See* Massachusetts Department of Transitional Assistance Website, *available at* https://www.mass.gov/service-details/department-of-transitional-assistance-dta (noting that, among other programs, the Department of Transitional Assistance administers the Supplemental Nutrition Assistance Program (SNAP) (last visited Feb. 10, 2021).

SNAP benefits are the successor to the food stamps that Range stole to earn his disqualifying conviction. So, the government submits that section 5K is the more appropriate charge. *See United States v. Marino*, 833 F.3d 1, 9 (1st Cir. 2016) (affirming district court's finding that defendant's false certification to DTA that he earned no income violated Mass. Gen. L. ch. 18, § 5K.)

[4] The government addressed Range's arguments concerning the jurisdictions of Hawaii, Georgia, Oregon, and Ohio in its opposition to Range's summary judgment motion and incorporates that filing by reference.

the promotion of public safety if they contain[ ] reliable statistical evidence that people with the Challenger['s] background [were] more likely to misuse firearms or were otherwise irresponsible or dangerous." 836 F.3d at 355. In *Binderup*, the court did not find the studies applicable to individuals like those challengers; but here those studies provide a reasonable fit to the government interest.

Range asks this Court to impose a burden above intermediate scrutiny in analyzing the government's studies. For example, he points out that he is now one year older than the individuals studied in *Prior Misdemeanor Convictions as a Risk Factor for Later Violent and Firearm-Related Criminal Activity Among Authorized Purchases of Handguns*, 280 J. AM. Med. Ass'n 2083 (1998). In *Binderup* seven judges of the Third Circuit viewed the studies presented by the government favorably and "refused to parse the government's evidence as finely as the plaintiffs ask us to." 836 F.3d at 400 (Fuentes, J., concurring). When applying intermediate scrutiny, courts must not tread within Congress' territory: "[i]t is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments. Our Court has cautioned that conflicting empirical evidence . . . does not suggest, let alone compel, a conclusion that the 'fit' between [a challenged firearm regulation] and public safety is not reasonable." *Id.* at 401 (internal citations and quotations omitted).

Range does not offer any empirical evidence on his own and merely attempts to distinguish himself from the government's studies. But "[t]he question is not whether someone exactly like the plaintiff[ ] poses a threat to public safety," rather it is to determine "whether the fit between the challenged regulation and the asserted objective is reasonable, not perfect." *Id.* (internal quotations and citations omitted). "[M]ost felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent

7

gun use." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010) (citation omitted). Judge Fuentes adopted the position of Fourth Circuit Judge Wilkinson: "This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." 836 F.3d at 401.(citing *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011)).

The government offers more than just studies as justification for banning Range from owning firearms, including his two straw purchases. In response, Range offers a misleading analysis of his wife's straw purchase of two hunting rifles. Range cites to ATF Form 4473, but he does so incompletely and therefore omits critical information. Range blithely ignores the language in ATF Form 4473, which makes it abundantly clear that one cannot be a bona fide purchaser if the gift recipient is ineligible to possess a firearm. In the notes concerning Question 21.a of Form 4473, it states "[a] gift is not bona fide if . . . the other person is prohibited by law from receiving or possessing the firearm."[5] In the following paragraph, the Form states that "the transferor/seller may not transfer a firearm to any person he/she knows or has reasonable cause to believe is prohibited under 18 U.S.C. 922(g), (h), (n), or (x)."

The two separate purchases of hunting rifles thus fall squarely within the above prohibitions. Range's wife knew Range could not legally purchase a firearm – he told her that was the case after the gun shop rejected his attempt to purchase a rifle. Range concedes his wife knew about the Pennsylvania Instant Check System (PICS) denial. Opp. Br. at 21 ("My wife did know [about the denial.] We thought for sure it was a mess-up in the system.") (citing

---

[5] *See* https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

8

B. Range's Deposition 22:12-20). This awareness is "record evidence," *cf.* Opp. Br. at 21, that Range's wife knew he could not legally possess a firearm. Range now conveniently claims that gun store employees purportedly "misled" him. But Range did not contact Pennsylvania State Police, who maintains the PICS , to determine the reason why it was unlawful for him to possess. Although he professes to "strongly value[] his Second Amendment rights," Opp. Br. at 20, Range did not investigate further with the governmental entity that barred him from legally owning a firearm. This Court should be wary of crediting Range's assertion that the law did not apply to him, notwithstanding multiple PICS denials of his gun purchases.

III.  **Conclusion**

Range committed a serious crime and application of 18 U.S.C. § 922(g)(1) to Range reasonably fits a compelling government interest in promoting public safety. Accordingly, this Court should grant the government's motion for summary judgment and deny Range's cross-motion for summary judgment.

          Respectfully submitted,

          JENNIFER ARBITTIER WILLIAMS
          Acting United States Attorney

          <u>s/ Susan R. Becker for GBD</u>
          GREGORY B. DAVID
          Assistant United States Attorney
          Chief, Civil Division

          <u>s/ Paul J. Koob</u>
          PAUL J. KOOB
          ERIC D. GILL
          Assistant United States Attorneys
          Eastern District of Pennsylvania
          615 Chestnut Street, Suite 1250
          Philadelphia, PA 19106-4476
          215-861-8432/8250 (phone)
          215-861-8618 (facsimile)
          Paul.Koob@usdoj.gov
          Eric.Gill@usdoj.gov

          *Attorneys for Defendants*

Dated: February 12, 2021

## CERTIFICATE OF SERVICE

I certify that on this day, the foregoing "Reply in Support of Defendants' Motion for Summary Judgment" and supporting documents were filed electronically and are available for viewing and downloading from the court's ECF system.

Dated: February 12, 2021                              s/ Paul J. Koob
                                                                                                 PAUL J. KOOB
                                                                                                  Assistant United States Attorney